# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MARVIN JOHNSON,

        **Plaintiff,**

v.                                 Case No.  8:11-cv-186-T-33TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        **Defendant.**

_____/


## REPORT AND RECOMMENDATION

      The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

### I.

      Plaintiff was forty-nine years of age at the time of his administrative hearing in February 2009.  He stands 5 feet 6 inches tall and weighed 170 pounds.  Plaintiff has a high school education and one year of vocational training.  His past relevant work was as a circuit board assembler, machine operator, and packager.  Plaintiff applied for disability benefits in April 2005, alleging disability as of January 1, 2003, by reason of neck pain, finger cramps, pain in both hands, numbness, shaking in left hand, pain in both wrists, upper and lower back pain, right leg shorter than left, and right ankle pain.  Plaintiff's application was denied

originally and on reconsideration. A de novo hearing was conducted before an Administrative Law Judge (ALJ) on January 15, 2008.[1] (R. 322-48). An unfavorable decision was issued February 14, 2008. (R. 292-300). The Appeals Council granted review, vacated the decision, and remanded the case for further consideration on November 14, 2008. (R. 311-12).

The administrative hearing on remand was conducted February 3, 2009. Plaintiff testified that the problems with his neck, shoulder, and lower back had worsened since his prior hearing. Additionally, Plaintiff complained of problems with his feet. He wears orthotics to compensate for his right leg being shorter than the left. He was diagnosed with prostate cancer in March 2008 and underwent surgery in June 2008. In January 2008, he consulted with a pain management doctor, Dr. Samlaska, regarding steroid shots for his neck pain. Dr. Samlaska told him that he had a herniated disc, bone spurs, and arthritis in his neck. However, he did not return for treatment with her because of his surgery. Plaintiff describes

---

[1]At this hearing, Plaintiff testified that he was laid off from work in July 2003 and determined to take some time off and rest his hands which had grown stiff. He returned to his former work in 2006. He worked in the final assembly and packaging areas, and on the solder machine. His hands immediately got stiff again, and he developed pain in his neck and shoulders, especially his right shoulder. He has suffered low back pain off and on since 1995, tremors in his hands also. He left work again in July 2006 because of the pain in his neck, shoulder, and back. He described his neck pain as constant. It radiates to his shoulders. He takes pain medicine and muscle relaxers; he used a neck collar; and he has undergone injections and physical therapy. His low back pain is also constant and is aggravated on movement. He suffers hand tremors as well and sought care for the tremors in the Fall of 2006. He was also planning to see a pain management doctor.

He estimated that he can only sit for a half hour at a time before needing to stand up or walk around. Similarly, he can stand about a half hour before needing to sit due to problems with his low back and his right ankle. Because his right leg is shorter than his left, he can walk only one or two blocks before needing to break due to right ankle pain. He can lift up to ten pounds, but no more because of his right shoulder. His daily activities were limited and he no longer enjoyed hobbies.

The ALJ also took testimony from vocational expert, Teresa Manning. (R. 348-51).

his neck pain as increasing in severity and frequency. Plaintiff has health insurance that he pays premiums for from his savings. He currently has no other source of income and has not worked since his last hearing.

In response to questions about his past work, Plaintiff testified that the machine operator job involved the least physical exertion. As a machine operator, he would be sitting sixty percent of the time and standing forty percent. However, he could not stand when he wanted to; it was dependent upon the machine and the product he was building at the time. As an assembler, he would be sitting more than standing. Plaintiff again testified he was able to sit for less than an hour at one time before needing to stand due to cramps in his neck and low back. He did not believe he could return to either of these jobs because of the pain in his neck and low back.

Plaintiff's neck pain ranges from a level two to a level ten on a scale from one to ten with ten being the most painful. On an average day, his pain is a five or six. When his pain is not too bad, he will do stretching exercises recommended by the physical therapist. Additionally, he takes pain medication prescribed by Dr. Finn, Dr. Hobbs, and Dr. White. However, he prefers to take aspirin or Ibuprofen because he still suffers side effects of drowsiness and headaches from the medications. (R. 358-66).

The ALJ next called William Harvey, a vocational expert (VE), to testify. The VE initially classified Plaintiff's past work as a machine operator as exertionally light and his job as an electronics assembler as sedentary. Upon a hypothetical assuming an individual of

Plaintiff's age, education, and work experience, who is capable of sedentary[2] to light[3] activity, with a need to alternate standing and sitting, with slight decrease in hand strength bilaterally, worse on the left (his non-dominant hand), and mild left hand tremor, the VE opined that such individual could perform electronics assembly jobs similar to Plaintiff's past work. However, the number of such jobs available in the local and national economy would be eroded by thirty percent given Plaintiff's need to alternate sitting and standing every thirty minutes. With the added limitation that the hypothetical individual could only bend his neck to look down occasionally– or one-third of an eight-hour day– the VE testified that such individual could not perform the assembly jobs; however, even with the added limitation, the jobs of arcade attendant, scale attendant, and charge account clerk would be available. With the additional limitation that the degree of pain would effect his concentration such that he would be unable to do simple, repetitive tasks, no work would be available. (R. 366-73).

---

[2]"Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

[3]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of April 13, 2009, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the cervical and lumbar spine and benign essential tremors of the left hand, he nonetheless had the residual functional capacity to perform sedentary work with the ability to alternate sitting and standing every thirty minutes. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past work as a machine operator as the job was performed by Plaintiff, as well as other jobs available in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 20-29). The Appeals Council considered additional information and denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises five claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) Remand and reversal demanded with an immediate award of benefits – past work not SGA;

(2) Remand and reversal demanded with an immediate award of benefits – Failure to follow the testimony, which results in an incomplete hypothet (sic);

(3) Remand and reversal demanded with an immediate award of benefits – Failure to give proper weight to opinions of treating physicians;

(4) Remand and reversal demanded with an immediate award of benefits – Non-recognition of all impairments; and

(5) Remand and reversal demanded with an immediate award of benefits – Failure to properly utilize the 11th Circuit pain standard.

(Doc. 7).

On his first claim, Plaintiff urges the case be reversed and remanded due to the ALJ's finding that Plaintiff could perform his past relevant work as an assembler.  Notwithstanding this conclusion, the ALJ had noted earlier in his decision that Plaintiff's work in 2006 was not substantial gainful activity (SGA) because it was an unsuccessful work attempt.  Because past work that is not SGA cannot be considered as past relevant work, the ALJ erred in concluding that Plaintiff could perform past relevant assembly work.  (Doc. 7 at 1-2).

The Commissioner responds that the ALJ's reference to Plaintiff's work as an assembler in 2006 was, at best, harmless. Plaintiff testified that his 2006 job was the same job he had previously, operating the same machine for the same company which he did from 1995 to 2003. Thus, Plaintiff clearly had past relevant work as an electronics assembler and thus the ALJ's conclusion of such at step four was not error. In any event, the ALJ proceeded on to step five of the sequential evaluation process and found, with the assistance of VE testimony, that Plaintiff could perform other work in the local and national economy. (Doc. 8 at 4-7).

Here, I agree with the conclusions of the Commissioner. Plaintiff claimed disability as of January 1, 2003, despite the fact that he worked well into that year and according to his testimony, he was planning on making a career change when he was laid off. He testified at both hearings that his past work (before and after the break in 2003) had involved the assembler position. *See* (R. 324-25, 360-62). His earning records both before and after his work break in 2003 revealed income above the substantial gainful activity thresholds suggested by the Regulations.[4] And, the ALJ expressly found that Plaintiff had worked at the substantial gainful activity level on his return in 2006. (R. 27). Nonetheless, the ALJ found

---

[4]Under the regulations, "substantial gainful activity" is "work activity that is both substantial and gainful." *See* 20 C.F.R. 404.1572. Substantial work activity is "work activity that involves doing significant physical or mental activities" and gainful work activity is work activity done "for pay or profit." *Id.* Thus, the regulations define "past relevant work" as work performed within the past fifteen years that was substantial gainful activity and lasted long enough for the claimant to learn to do it. *See* 20 C.F.R. § 404.1560(b). The regulations use earnings guidelines to assist in the determination of whether a claimant's past work was substantial gainful activity. *See* 20 C.F.R. 404.1574. Case law in this circuit dictates that past relevant work must have been substantial gainful activity or it cannot be considered past relevant work. *See Vaughn v. Heckler*, 727 F.2d 1040, 1042 (11th Cir. 1984).

the latter work attempt unsuccessful. (R. 23). Despite any inconsistency in these findings, any error in this regard was harmless. As the Commissioner urges, the record supports a finding that the same assembler position was performed at the substantial gainful activity level between 1995 and 2003 and such work clearly qualified as past relevant work. This is supported by Plaintiff's testimony and his administrative filings which indicate that he had done such assembly work since 1995. *See* (R. 114, 147, 155, 159). In any event, as the hearing transcript reflects, Plaintiff's own counsel developed testimony from the VE that even if Plaintiff could not perform his assembly work, he could perform other jobs in the national economy under a hypothetical which included all the limitations imposed by the ALJ. Thus, even if the ALJ erroneously labeled Plaintiff's work in 2006 as past relevant work, the error was harmless and a remand would serve no useful purpose. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case). Plaintiff is not entitled to relief on this claim.

On his second claim, Plaintiff complains that the ALJ did not accurately cite the Plaintiff's testimony in posing a proper hypothetical to the VE. Initially, Plaintiff notes that the VE testified that if Plaintiff needed a sit/stand option at will, he could not perform his sedentary job of electronics assembler as performed. And, he urges that he testified that he could only sit for less than one hour per day in an eight-hour day. Thus, he urges there is no record support for the ALJ's hypothetical that included a limitation for sitting thirty minutes, standing briefly, and then resume sitting again for another thirty minutes for a full eight-hour day. (Doc. 7 at 2-4).

In response, the Commissioner notes that the Plaintiff does not accurately recount his testimony on this claim. What Plaintiff actually testified to was not that he could sit for less than one hour in an eight hour day, but rather that he was able to sit less than an hour before he could no longer sit due to cramps in his neck and low back. Thus, it was reasonable for the ALJ to interpret Plaintiff's testimony as he could sit for thirty minutes before needing to stand. Further, Plaintiff's own attorney appeared to endorse this limitation, assuming from Plaintiff's testimony that he could sit for thirty minutes before having to rise (R. 370), and on that limitation, the VE still opined the assembly work would be available as generally performed, albeit at a reduced level. (Doc. 8 at 7-8).

Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *See Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).[5] Here, however, counsel's factual predicate for this argument misreads the Plaintiff's testimony. Plaintiff did not testify, as here contended, that he could only sit less than one hour in an eight-hour day, but rather, when asked "[h]ow long could you sit before you would need to stop sitting?," the Plaintiff responded, "less than an hour." (R. 362). Counsel representing Plaintiff at the hearing referenced Plaintiff's statement that he could sit

---

[5]Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

for thirty minutes in his questioning of the VE.[6]  Even with that limitation, Plaintiff could find

assembly jobs in the local and national economy, albeit on a reduced occupational base.  *See*

(R. 370-71).  Ultimately, the ALJ credited the thirty-minute limitation on sitting in his RFC.

This was consistent with Plaintiff's testimony and fairly addressed by the VE.  Thus, I agree

with the Commissioner that the ALJ gave this testimony a fair reading and the hypothetical

questions, whether by the ALJ or Plaintiff's counsel, fairly assessed Plaintiff's testimony as

well.[7]

Plaintiff also argues in this claim and the next that the ALJ failed to give proper

weight to the opinions of his treating physician, Dr. Charles Finn, and that when Dr. Finn's

functional assessment is properly considered, the hypothetical question to the VE was

incomplete and a finding of disability was required.

In November 2007, Dr. Finn, an orthopedic specialist, completed a physical residual

functional capacity (RFC) assessment which in essence limited Plaintiff to such a degree that

he was disabled.  *See* (R. 198-202).  As the decision reflects, the ALJ gave Dr. Finn's opinion

testimony some but not controlling weight because it was based on a single evaluation of

Plaintiff and was inconsistent with his own physical examination findings as well as the

overall medical evidence of record and the objective evidence.  Further, the opinions were

---

[6]As noted above, Plaintiff testified at his first hearing that he could sit for thirty
minutes but then had to stand or walk about.  And, he could stand for thirty minutes and then
he had to sit or lean against something.  (R. 333).

[7]The VE testified that Plaintiff could perform the assembly work as generally
performed as well as other work.  The ALJ ultimately decided that Plaintiff had the RFC to do
the assembly work as he had performed it.  Again, even if there was error in this conclusion,
the ALJ noted that the VE also found other work available to Plaintiff and Plaintiff does not
challenge this other work.

contrary to Plaintiff's own testimony that he could sit for thirty minutes before having to change position and no other treating or examining doctor had documented findings or indicated the frequency for Plaintiff's need to alternate sitting and standing to the degree assessed by Dr. Finn. (R. 26). By Plaintiff's account, the opinions from Dr. Finn were not properly discounted.

As for the finding related to the "other medical evidence," Plaintiff makes a confusing argument that such evidence offers no bases to discount Dr. Finn's opinions. First, he urges that the opinions of consultative examiner, Dr. Wassel do not provide good cause to discredit the treating doctor's opinion testimony especially since the opinion was rendered before objective evidence confirmed bony spurring at C5-6, C6-7 and C7-T1 and an MRI of the shoulder revealed a moderate size tear. Next, he urges that the objective evidence does not support the ALJ's conclusion either. As for other treating or examining doctors, he urges that both Dr. Finn and the ALJ relied to some extent on the evidence from Dr. Cohen, a treating neurologist. As with Dr. Finn, the ALJ failed to properly refute Dr. Cohen to the extent he disagreed with his opinions. Further, he notes that Dr. Cohen had recommended an MRI of the brain in connection with his hand tremor, but no mention was made of that recommendation in the decision. Since Dr. Finn relied upon Dr. Cohen's opinion, together with his own clinical findings and the objective record, Dr. Finn's opinions should have been afforded substantial weight and no good cause was given for giving the evidence lesser weight.

Finally, Plaintiff criticizes the handling of an unspecified opinion from Dr. Samlaska, a pain management doctor, concerning sitting and an unspecified opinion for Dr.

Hobbs, the treating general practitioner. By Plaintiff's argument, the case should, at a minimum, be remanded for further consideration if not an award of benefits. (Doc. 7 at 4-8).

The Commissioner responds that the ALJ properly considered the evidence and opinions of Plaintiff's treating doctors. As to Dr. Finn, the Commissioner submits that the ALJ was correct in affording little weight to this doctor's opinions where the doctor provided only a single clinical finding of "tenderness" and no other explanation to support his highly limiting restrictions. The doctor's records included no clinical findings or objective support for the disabling limitations he imposed. Further, Dr Finn's assessment was inconsistent with the findings of Dr. Hobbs, Dr. Wassel, and Dr. Cohen. Dr. Hobbs provided minimal treatment on minimal findings. Dr. Wassel's evaluation, including his clinical findings, also supported the decision to discount Dr. Finn's assessment, and his conclusions are not at all undermined by later objective scans which revealed little. As for Dr. Cohen, contrary to Plaintiff's unsupported argument, a review of his findings does not support the limitations imposed by Dr. Finn. And, while Dr. Cohen recommended an MRI of the brain be performed, that recommendation itself supports no limitations. In any event, there was an MRI of the brain which revealed a lacunar infarct as revealed in Dr. Finn's notes. *See* (R. 203-04). Rather than supporting the limitations imposed by Dr. Finn, Dr. Cohen's unremarkable clinical findings and diagnostic studies provide further support for the ALJ's decision to discount the RFC assessment. As for Dr. Samlaska, Plaintiff fails to identify any opinion not addressed by the ALJ, and in any event, her findings as well as Dr. Hobbs' do not support limitations as determined by Dr. Finn. (Doc. 8 at 8-16).

13

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

After careful review of the whole of the medical evidence, I find no error warranting remand on this claim.[8] First, it is apparent that the ALJ reviewed the whole of the medical evidence and fairly recounted the same. Further, his determination to discount Dr. Finn's

---

[8]This court's scheduling order requires that Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged. Moreover, any such discrete challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards. Any contention for which these requirements are not met is subject to being disregarded for insufficient development. (Doc. 6 at 1-2). As the Commissioner notes, the Plaintiff's rambling argument on this claim generally fails to identify the particular opinions by the doctors which are at issue. Counsel's failure to comply with the court's directive is sufficient grounds to deny the claim.

RFC opinions is adequately supported by substantial evidence. A review of Dr. Finn's

records, (R. 203-20), reveals that there are wholly insufficient clinical findings to support the

extreme limitations in his RFC assessment. Thus, the conclusion that this doctor's own

findings are inconsistent with his assessment is likewise supported by substantial evidence.

(R. 198-202).[9] As for the other medical record, it too provides support for the ALJ's

conclusion to discount Dr. Finn's RFC assessment. The objective evidence of Plaintiff's

spine, without more, offered little. Thus, it showed only moderate spurring at C5 though T1.

(R. 220).[10] By my consideration, the clinical observations and test results reported by Dr.

Steven Cohen, the neurologist, substantially undermine Dr. Finn's assessment for disabling

limitations. (R. 222-30).[11] Likewise, the reports from treating doctors, Samlaska and Hobbs,

failed to reveal any findings or conclusions which would support Dr. Finn's RFC assessment.

Again, the argument is presented without specifics as to which opinions of these doctors were

not properly considered. However, by my review, Dr. Samlaska's findings and conclusions

---

[9]These records suggest that Plaintiff responded well to treatment including injections and physical therapy. At times, he needed no injections or physical therapy because he was doing well. He was generally neurologically intact. Significantly, there is a lack of clinical findings to support the limitations set forth in the RFC assessment. *Id.*

[10]A note from Dr. Finn later reported a bulging disc at L4-5 with some spondylosis and stenosis which he was treating via physical therapy. (R. 203). However, as noted, this doctor's clinical notes suggest that Plaintiff responded well to his care and do not suggest that conditions in his spine caused the severe limitations assessed.

[11]On neurological testing, the findings were essentially normal. (R. 223). Nerve conduction studies of the upper extremities were normal. (R. 223, 226-27). In Dr. Cohen's opinion, the reported neck pain was due to muscle spasm. He did request an MRI of the brain due to the hand tremor, which he otherwise described as a benign essential tumor treatable with beta blocker or other medication. (R. 223). Contrary to Plaintiff's urging, the MRI was obtained and reviewed by Dr. Finn.

are fairly set forth in the decision (R. 25) and the ALJ's conclusion that these findings do not support a disabling condition is also fully supported. (R. 184-90). As for Dr. Hobbs, his records reveal nothing remarkable by way of clinical findings and very conservative care. Such was fairly assessed by the ALJ and once again, Plaintiff fails to demonstrate otherwise. (R. 232-43; 272-87).

Under the applicable standard, the ALJ may discount the opinions of a treating doctor upon a showing of good cause. Here, the ALJ has provided adequate good cause to discount Dr. Finn's over-the-top RFC assessment.

On his fourth claim, Plaintiff urges reversal on the basis that the ALJ failed to consider all his impairments. Thus, although the ALJ found Plaintiff's hand tremors to be a severe impairment, he made no finding of a severe impairment for lack of bilateral manual dexterity. He urges that "if" a person lacks bilateral manual dexterity and is relegated to the sedentary work level, he should be found disabled and awarded benefits. Additionally, Plaintiff argues that the ALJ erred in not properly addressing the issue of Plaintiff's muscle spasms for which Plaintiff had received trigger point injections and upon which Dr. Cohen based Plaintiff's pain complaints. Further, the ALJ's failure to properly analyze these impairments in combination results in reversible error. (Doc. 7 at 8-9).

By the Commissioner's response, the ALJ credited Plaintiff with severe impairments including benign tremors of the left hand. However, Plaintiff failed to demonstrate that his hand tremors or condition in general prevented him from performing the minimal lifting associated with sedentary work and to provide any evidentiary support that his hand tremors limited his dexterity. As for the muscle spasms, the Commissioner notes that they existed, at

best, occasionally, and Plaintiff fails to demonstrate such condition prevented him from performing a wide range of sedentary work, his past relevant work, or other work. The ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. (Doc. 8 at 16-18).

Here, the Commissioner is again correct. Plaintiff wholly fails to establish from the medical record that he suffered a significant limitation in his bilateral manual dexterity. As the decision reflects, the hand tremor condition was fairly addressed by the ALJ in his review of the reports from both Dr. Finn and Dr. Cohen. (R. 25). By their findings, the tremors were mild, causing only mild limitation in strength. Nerve conduction tests by Dr. Cohen were normal and he noted the condition was treatable by beta blockers or Mysoline. Neither doctor made a finding regarding reduced dexterity.

As for the muscle spasms, Plaintiff is correct that Dr. Cohen examined Plaintiff and attributed his neck pain to muscle spasms. It is also correct that occasionally Plaintiff received injections from Dr. Finn. However, Plaintiff is incorrect that the ALJ overlooked the condition or that the limitations associated with Plaintiff's neck pain were not properly assessed.[12] As the decision reflects, treatment notes from Dr. Finn suggested that Plaintiff responded well to treatment and, on occasion, no injections or physical therapy was necessary at all. While attributing Plaintiff's neck pain to spasms, Dr. Cohen found no significant paraspinal muscle spasm or tenderness. On neurological testing, Dr. Cohen's findings were

---

[12]Plaintiff provides no medical evidence or other record support for this claim and on that basis alone, it should be denied.

17

essentially all normal and without any suggestion of significant deficiencies in strength, reflex, sensory, or motor functioning. On this record, it is simply incorrect to argue that the evidence of Plaintiff's occasional muscle spasms was not fairly reviewed and assessed by the ALJ. Significantly, the mere diagnosis of the condition alone is not significant to reveal the extent of Plaintiff's limitations and reveals nothing about the limiting effects on Plaintiff's ability to function. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). In sum, when the decision is fairly read, the ALJ adequately addressed both the left hand tremors and the neck pain and spasms.

Finally, absent some other showing by Plaintiff, the ALJ's statement that he considered the impairments in combination, is sufficient to overcome Plaintiff's bald contention otherwise. *See Wilson*, 284 F.3d at 1224.

On his final claim, Plaintiff seeks reversal with an award of benefits due to the ALJ's failure to make a proper analysis of his pain complaints. While acknowledging that the ALJ applied the appropriate standard, he urges that rather than rely on Plaintiff's treating doctors who found Plaintiff's complaints to be credible, the ALJ left out medical evidence or interpreted the evidence in a different way thus substituting his own opinions for those of the treating doctors which is prohibited. (Doc. 7 at 9-10).

The Commissioner responds that the ALJ did not error in discrediting Plaintiff's subjective complaints where the objective medical evidence did not support the severity of the alleged symptoms and neither did the records from Drs. Finn, Samlaska, and Cohen. On the contrary, as discussed by the ALJ, the medical records undermine Plaintiff's allegations and

provide substantial evidence to support the credibility finding made by the ALJ here.  (Doc. 8 at 18-20).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale*, 831 F.2d at 1012.  Proper application of the regulatory standard will satisfy this circuit's pain standard.  *See Wilson*, 284 F.3d 1226.

Here, the decision reflects the ALJ's application of the appropriate standard.  (R. 23-27).  Thus, while the ALJ credited Plaintiff with impairments which reasonably could be expected to cause his symptoms, upon review of the medical record, the symptoms were overstated to the extent that Plaintiff claimed disabling pain.  As suggested above, my review

of the medical evidence, that of the treating doctors, Finn, Cohen and Samlaska, as well as the other medical doctors, supports the ALJ's conclusion that Plaintiff did not suffer from disabling symptoms. To the extent that Plaintiff here declares otherwise, he does so without citation to the record or demonstration that the ALJ's conclusions were in error. In short, the ALJ's fair review and assessment of the medical evidence and Plaintiff's own claims provide the adequate good cause to discount Plaintiff's pain complaints.

IV.

In sum, because the medical evidence supports the conclusion that Plaintiff could perform sedentary work with a sit/stand option and the vocational testimony supports that Plaintiff could either perform his past work as generally performed or other work available in the local and national economy, the decision of the Commissioner of the United States Social Security Administration should be affirmed. Errors, if any, are harmless and I recommend that the decision be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
9th day of November 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record